## MARTIN v. SOUTHERN RY.

1. RAILROADS—TRESPASSER — PASSENGER — NONSUIT.— There being some evidence tending to show that plaintiff was a passenger and not a trespasser on defendant's train, nonsuit was properly refused. Following *Littlejohn* v. *R. R.*, 49 S. C., 12.

2. IBID.—IBID.—IBID.—When a person with a ticket, and with the intention to ride as a passenger, boards the train upon which his ticket entitles him to ride, even at an unusual time and place, he is entitled to the rights of a passenger to the extent of not being mistreated by the employees.

3. CHARGE—NEGLIGENCE.—Portions of charge excepted to do not give correct idea of charge on question of negligence.

4. PLEADING—CONTRIBUTORY NEGLIGENCE is a defense which must be specifically pleaded. Following *Wilson* v. *R. R.*, *ante*, 79.

Before BUCHANAN, J., Fairfield, February, 1897. Affirmed.

Action by Samuel Martin against Southern Railway Company. Judgment for plaintiff. Defendant appeals.

*Mr. B. L. Abney*, for appellant, cites: *As to exception 1:* 161 Mass., 298; 31 Ill. App., 460; 139 Mass., 238; 7 Pa. St., 119; 77 Tex., 228; 56 Fed. R., 1014. *Exception 2:*

23 S. C., 531.  *Exception 4:* 19 S. C., 205; 21 S. C., 495; 23 S. C., 531; 32 S. C., 299; 15 Wall., 407.

*Messrs. Ragsdale & Ragsdale, contra,* cite: *As to exception 1:* 39 S. C., 163; 40 Ind., 37; 14 L. R. A., 798; 14 How., 468; 5 Rich., 44; 9 Ill. App., 250; 98 Ala., 293; 1 Sneed, 38, 220; 35 W. Va., 588; 14 L. R. A., 798; 15 Oreg., 220; 19 Ohio St., 110; 120 Ind., 159; 58 Am. & Eng. R. R. Cases, 245; 154 Pa. St., 364; 68 N. Y., 124. *Exception 2:* 24 L. R. A., 521; 58 N. Y., 126; 16 How., 469; 3 Brod. & Bing., 54. *Exception 4:* 42 S. C., 473.

Nov. 22, 1897.  The opinion of the Court was delivered by

MR. JUSTICE GARY.  The complaint herein alleges: 1. (The corporate existence of the defendant.)  2. "That the plaintiff, on the 13th day of November, 1896, having purchased a ticket, and paid the usual fare therefor, whereby the defendant undertook to carry the plaintiff as passenger from Columbia to Alston, boarded defendant train as it was leaving Columbia for Alston.  3. That the said train moved off toward Alston just after the plaintiff stepped upon the platform of the car, and while standing on the said platform and before he had gone inside of the said car, the plaintiff was approached by the agent and servant of the defendant in a very hostile manner, and commanded by the said servant to alight from the said car, which was then in motion. 4. That in trying to alight from the said car, pursuant to the command of the defendant's agent and servant as aforesaid, the plaintiff was thrown violently to the ground, whereby one of his arms was broken, and whereby his back was seriously injured, rendering the plaintiff utterly unable to provide for himself and his family; and the plaintiff alleges that the defendant, by its agents and servants as aforesaid, did not observe that care for the plaintiff's safety which was due to the plaintiff as a passenger on its train, and was unmindful of the consequences which were entailed on the plaintiff as aforesaid, to the damage of the plaintiff in the sum of $1,995."

The answer denied all the allegations of the complaint except the corporate existence of the defendant. The jury rendered a verdict in favor of the plaintiff for $266.

The defendant appealed upon exceptions, the first of which is as follows: 1. "Because the presiding Judge erred in overruling defendant's motion for a nonsuit, which was based upon the following grounds, to wit: (1) That the evidence introduced did not show, or tend to show, that the relationship of passenger and carrier existed between the plaintiff and defendant at the time of the accident, and that no actionable negligence on the part of the company was shown by the evidence, nor was there any evidence tending to show such. (2) That assuming all of plaintiff's testimony to be true, and all the inferences therefrom to be true, nothing was traced to the action of the company or any of its authorized agents, causing or producing the injury complained of. (3) Assuming that the baggage-master or person in charge of the baggage car did say exactly, and did act exactly, as the plaintiff testified, there was no evidence to show, or tending to show, that it was the duty of the baggage-master to speak and act as testified to, or that such came within the scope of his agency at all, and the defendant company was not bound thereby."

The three grounds set forth in this exception, upon which the defendant complains of error on the part of the presiding Judge in refusing the motion for nonsuit, depend, as admitted in the argument of defendant's attorney, upon the question whether there was any testimony that the relation of passenger and carrier existed between the plaintiff and the defendant. The plaintiff, *inter alia*, testified as follows: "Q. You bought a return ticket, you say, to Columbia and return? A. Yes, sir. Q. That was fair time, was it? A. Yes, sir. Q. Well, Sam., what happened to you on your return—just give the circumstances, now? A. Well, going down to the cars, the people down there were just as thick as your fingers, you couldn't hardly get through them. I had my ticket, of course, aiming to get home that morn-

ing, and coming down to the train; I always rides in the second class coach, it is divided, one part, in front, of course, was the baggage car, and the other, behind, was the second class coach—and the car was just starting off as I got there, just about in motion to start off—and I stepped on the first place, on the front end of the baggage car—just stepped upon that, and then the car was going on off at that time. Well, going on, of course, the car was gaining speed as I went on, and when the baggage-master saw me, it had went on a little piece, and when I got to the door going into the baggage car, he saw me, and he come running to me and said, 'Get off, get off.' He come towards me with force and I turned around to jump off. The car had gained speed right smartly, and I jumped off and struck this shoulder, and hit the ground and broke that arm." It is a principle of law well settled, that if a motion for a nonsuit is improperly refused, and the testimony afterwards introduced by the defendant supplies that which was necessary to prevent the nonsuit, the order refusing the nonsuit will not be set aside. *Scates* v. *Henderson,* 44 S. C., 554, and cases therein cited. We will, therefore, in deciding whether there was error in refusing the motion for nonsuit, consider the following testimony of T. J. Hammond, the baggage-master, who testified in behalf of the defendant, to wit: "Q. Did you have anything to do with passengers standing on that front platform? A. No, it is very seldom any one rides out there, sir; if I see any one out there I always have them brought inside." The testimony tended to establish the following facts: 1st. That the plaintiff had a ticket entitling him to ride on the train mentioned in the complaint. 2d. That it was his intention to ride on the passenger car of said train, when he boarded it. 3d. That the car, upon the platform of which he entered, was divided into two apartments, one of which was used as a place for baggage, and the other for second class passengers. 4th. That the train was moving slowly when the plaintiff got upon the platform, but he was not injured while boarding the train.

5th. That passengers had previously ridden on said plat-
form, and whenever seen by the baggage-master were always
brought inside. Whether the plaintiff was a passenger or a
trespasser, depended upon the inference to be drawn from
the testimony, under proper instructions from the Court,
and was peculiarly a matter for the consideration of the
jury. *Littlejohn* v. *R. & D. R. R. Co.*, 49 S. C., 12. If
there had been no testimony from which the inference could
be drawn that the plaintiff was a passenger, then an order
of nonsuit would have been proper, but there was such tes-
timony in this case. The facts in this case are much
stronger in favor of the plaintiff than in the case *Mo., K.
& T. Ry. Co. of Texas* v. *Williams*, 40 S. W. R., 350, in
which it was held that the plaintiff in that case was a pas-
senger. The facts of that case are thus stated: "The tes-
timony shows that Eaton Williams was in the town of
Bruceville, on the line of appellant's railroad; that he desired
to return to Waco; that he was not at the depot when the
train going to Waco arrived, but, hearing it approach, he
ran and got on it as it was leaving the depot. He got on
the front end of the first car that came by him, which was
the baggage car, and located immediately behind the engine
and tender. He testified that he got on there because he
had no time to get on elsewhere; the train going down
grade, and at an accellerated rate of speed. He also testi-
fied (and in support of the verdict we find), that he had the
money with which to pay his fare to Waco, and intended
to do so. He had no ticket. When the train had gone
about 200 yards, the fireman, using a hose that was on the
engine, and used by the engineer and fireman to dampen
the coal and keep down the dust, began throwing hot water
on said Williams, and continued to do so until he jumped
off the train. The jump caused the injuries complained of
and for which the jury returned a verdict in his favor of
$2,000." In that case, Mr. Justice Key, delivering the opin-
ion of the Court, said: "Counsel for appellant make the
argument, that in order for one not holding a ticket to be-

come a passenger on a railway train, he must not only have
the means and intention to pay his fare, but he must also
get in a passenger coach—the place provided for passen-
gers—and that when he gets on the train at some other
place, and especially, as in this case, when he locates him-
self at a place that cannot be reached by the conductor
without stopping the train, he is not a passenger.   We do
not think that the particular place where a person may be
on a passenger train should necessarily and conclusively
determine whether or not such person is a passenger.   One
who has paid his fare and procured his ticket may disre-
gard some rules prescribed by the carrier, and yet such con-
duct on his part would not change the fact that he was a
passenger, nor relieve the railway company from liability,
for an unjustifiable assault committed upon him by one of
its employees.   A person who boards a passenger train,
having the means, and intending in good faith to pay his
fare as soon as he has an opportunity to do so, is just as
much a passenger as though he had paid his fare, and pro-
cured a ticket before getting on the train.   It follows,
therefore, that while the place one may be occupying upon
the train at the time of his injury may be important in de-
termining whether or not he intended to pay his fare, it
does not conclusively fix his status either as a passenger or
a trespasser.   It may be conceded that a person found in
the position occupied by Eaton Williams at the time he
was injured is subject to the suspicion of being a trespasser;
but if such person, having the means and intending to pay
his fare, can—as Eaton Williams in this case did—give a
reasonable excuse for why he was not in a passenger coach,
he will, in law, be a passenger, and entitled to protection
against the wrongful acts of the railroad company and its
employees.   Neither the carrier nor its employees can as-
sume that a person on any car of a passenger train is a
trespasser, and if they treat him as a trespasser, merely be-
cause he is not in one of the cars provided for and usually
occupied by passengers, and injury results therefrom, and

the facts show that he is a passenger, the railroad company will be liable." See, also, *Chicago, M. & St. P. Ry. Co.* v. *Lowell*, 14 Sup. Ct., 281, in which it is held that getting off a train on that side of the platform prohibited by the rules of the railroad company is not such negligence, *per se*, as will prevent the plaintiff from recovering damages for injury caused by defendant's negligence. Mr. Justice Brown, in concluding the opinion of the Court, says: "In other words, proof that the plaintiff violated the regulations of the company, even without the excuse of a cogent necessity, will not, as a matter of law, debar him from a recovery." The reasoning in that case is applicable to the case before us. In the case of *Washington & G. R. Co.* v. *Tobriner*, 13 Sup. Ct., 557, it was decided that, even if there was negligence on the part of the plaintiff in placing himself in a dangerous position, it will not bar his right to recover damages, if the injury was caused directly and proximately by the negligence of the defendant. So, in the present case, if there was negligence on the part of the plaintiff, the evidence tended to show that it was not the proximate cause of the injury, and, therefore, did not bar his right of recovery of damages. If the presiding Judge had granted the order of nonsuit, he would necessarily have had to reach the conclusion that the plaintiff was a trespasser, and this would have been an invasion of the province of the jury. *Littlejohn* v. *R. & D. R. Co.*, *supra*. The first exception is, therefore, overruled.

The second exception is as follows: 2. "Excepts because his Honor, the presiding Judge, erred, as matter of law, in charging the jury as follows: 'But if, Mr. Foreman, notwithstanding the fact it were an unusual place where a man were to get on a train, or even while the train was in motion, having a right on the car, the particular act, the particularly negligent act, of the person having ended, having been completed, having been finished, though he were an intruder and trespasser, there is some protection, there is some care, the railroad owes to him, and

he cannot be ruthlessly thrown off or injured; and if it were to be done, Mr. Foreman, the company would be liable for it. Because of the wrongful act of one person, that has been terminated, and finished, and completed, the railroad could not do another wrong, even if it were to put him off their own property. There is a rule of care that it owes even to a trespasser. So, therefore, Mr. Foreman, because one doesn't get upon the train at a proper place, or upon the proper place on the train, the law does not say he is not to be protected, if, having boarded the train while moving, and however careless it may be in a person, if he is not injured through that carelessness, and his act has been completed, and afterward, after that act has been completed, at the instance and by the compulsion and command of an agent of the railroad, he is compelled to jump from the train while that train is moving, and is injured, if he is injured through that act, being forced and compelled to jump by the command and at the instance of the agent of the corporation, and is injured, that corporation would be responsible for it;' whereas it is submitted that, unless a person presents himself at the proper time and proper place of going upon or entering a car, he cannot, as a passenger, claim a right on a car or a right to enter a car; and if he does attempt, at an improper place and at the wrong time, to go upon a car, and does actually get thereon, it does not constitute the relationship of passenger, unless the position of such person has become known to the agents of the railroad company in charge of the car, and he is in some way accepted as a passenger; that the language of the presiding Judge led the jury to believe that when the wrongful act of the person by getting on the car had been completed, that the plaintiff became a passenger; whereas it is submitted that he still continued to be a trespasser; and if a person on such train compelled such trespasser to jump from the train while the train was moving, and he was injured, the railroad company is not liable, unless such act upon the part of the agent was shown to be within the

scope of such agency and in the performance of duties which had been devolved upon him by the railroad company. And by the language used by the presiding Judge, he confounded the care that was applicable to a passenger and that which was due a trespasser." An exception should raise but a single question, and this exception is defective in that respect; but, waiving this objection to its form, the authorities hereinbefore mentioned show that it cannot be sustained. The contractual relation of passenger and carrier is created when a ticket is purchased; and when a person, with a ticket and with the intention to ride as a passenger, goes upon the train upon which his ticket entitled him to ride as a passenger, even if he boards the train at an unusual time and at an unusual place, he is entitled to the rights of a passenger—at least to the extent of not being mistreated by the employees of the company. See *Johns* v. *Ry. Co.*, 39 S. C., 162. This exception is overruled.

The third exception is as follows: 3. "Excepts because the presiding Judge erred, as matter of law, in charging the jury as follows: 'Therefore, the rule is, whether or not, under the particular circumstances of the case, was there negligence? Was there absence of due and proper care?' Thus confounding the rights of a passenger and the rights of a trespasser, and misleading the jury in supposing that defendant company owed to the plaintiff ordinary care and prudence in looking out for the position that he occupied." The allegations of the complaint were to the effect that the plaintiff was a passenger at the time of the injury; there was testimony tending to sustain these allegations; and when the charge of the presiding Judge is construed as a whole, and with reference to the allegations and testimony, it will be seen that it was responsive to the issues in the case and free from error. Only a portion of the charge touching the question of negligence is set forth in the exception, and this portion standing alone does not give a correct idea of the charge on the question of negligence. This exception is also overruled.

The fourth exception is as follows: 4. "Excepts because the presiding Judge erred, as a matter of law, in charging the jury as follows: 'Contributory negligence, which you have heard the lawyers discuss here, is a matter that must be set up in the answer to be proved upon the defense, and it cannot be proved under a general denial. An affirmative matter of defense must be pleaded, else the proof will not be allowed to be introduced; or if it does come into the case, it will not be considered a matter of defense under the pleadings. Therefore, Mr. Foreman, the matter of contributory negligence is not pleaded here at all;' whereas it is submitted, that while contributory negligence is a matter of defense, yet such defense may be shown under a general denial." This question is disposed of by the decision in the case of *Wilson* v. *Charleston and Savannah Railway Co.*, recently rendered by this Court, in which it was held that contributory negligence is a defense which must be set up in the answer.

For these reasons, I am of the opinion that the judgment of the Circuit Court should be affirmed.

As Mr. Justice Pope and Mr. Justice Jones concur in this opinion, the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE MCIVER, *dissenting*. This action was brought by the plaintiff against the defendant company to recover damages for injuries sustained by him through the alleged negligence of the servants and agents of said company. The negligence alleged in the complaint is that on the 13th of November, 1896, the plaintiff purchased a ticket whereby the defendant undertook to carry the plaintiff as a passenger from Columbia to Alston, and that he boarded defendant's train as it was leaving Columbia for Alston; that said train moved off towards Alston just after the plaintiff stepped upon the platform of the car, and while standing on said platform, and before he had gone inside of the car, the plaintiff was approached by the agent and servant of the defendant in a very hostile manner, and com-

manded by the said servant to alight from said car, which was then in motion; that in trying to alight from said car, pursuant to the command of the defendant's agent and servant as aforesaid, the plaintiff was thrown violently to the ground, whereby he sustained the injuries complained of.

To sustain these allegations the plaintiff testified as follows: "Well, going down to the cars, the people down there were just as thick as your fingers; you couldn't hardly get through them.    I had my ticket—of course, aiming to get home that morning—and coming down to the train; I always rides in the second class coach—it is divided, one part in front, of course, was the baggage car, and the other behind was the second class coach; and the car was just about starting off as I got there—just about in motion to start off—and I stepped on the first place, on the front end of the baggage car, just stepped up on that, and then the car was going on off at that time.    Well, going on, of course, the car was gaining speed as it went on, and when the baggage-master saw me, it had went on up a little piece, and when I got to the door going into the baggage car, he saw me, and he come running to me, said, 'Get off, get off.'    He came towards me with force, and I turned round to jump off.    The car had gained speed right smartly, and I jumped off," and sustained the injuries complained of.    In his cross-examination this witness admitted that he did not go into the depot or under the Union shed to board the train he desired to take, but that he got on the car in Gervais street beyond the shed, supposing it to be the second class car—not noticing that it was the baggage car which he got on.    The other witnesses examined on behalf of the plaintiff add nothing material, to that of the plaintiff himself, as to the circumstances under which the accident occurred.

At the close of plaintiff's testimony, the defendant moved for a nonsuit, substantially upon three grounds: 1st, that there was no evidence tending to show that the relationship of passenger and carrier existed between plaintiff and defendant at the time the disaster occurred; 2d, that there

was no testimony tending to show any negligence on the part of the defendant by which the disaster was caused; 3d, that, assuming all the facts testified to by the plaintiff to be true, there is nothing in such testimony tending to show any fault upon the part of the defendant company or any one of its authorized agents. The motion for a nonsuit was refused by his Honor, Judge Buchanan, without assigning any reason, except that "there is something here for the jury." What question of fact was presented by the testimony for the plaintiff for the jury to pass upon, it is somewhat difficult to conceive. The fundamental question in the case was, whether the relationship of passenger and carrier had arisen; and that, under the undisputed facts of the case, presented a question of law for the Court and not for the jury to determine. There was no doubt of the fact. that the plaintiff had in his pocket a ticket from Columbia to Alston, and there was as little doubt that plaintiff boarded defendant's train—*not* at the proper place, but while it was crossing Gervais street, outside of the shed where passengers were invited and expected to take the trains; and there was also no doubt of the fact that plaintiff attempted to enter the train by the steps leading into the baggage car, instead of by the steps leading to the second class car; and there was also no doubt of the fact that while on the platform of the baggage car the plaintiff was directed by some one, whom I will assume to have been the baggage-master, to get off, and that plaintiff did jump off, and in doing so was injured. There was, therefore, no question of fact for the jury to determine. It is obvious, therefore, that the Circuit Judge erred in not ruling whether, under the undisputed facts, the relationship of passenger and carrier between plaintiff and defendant had arisen, as called upon to do by the first ground of the motion for a nonsuit. But I go further, and say that there was error in not ruling, under the undisputed facts, that the relationship of passenger and carrier between plaintiff and defendant had not commenced when the accident occurred, and that defendant

then owed no duty to the plaintiff *as a passenger*, and, if it owed him any duty at all, it was *as a trespasser.* Surely, the mere fact that the plaintiff had a ticket in his pocket did not give rise to any relationship as passenger; for, if so, then the absurd conclusion would be forced upon us that such relationship arose when the plaintiff was up at the fair grounds, or any other place in Columbia, where he had the ticket in his pocket. When, then, did this relationship arise? The only reasonable answer is, when the plaintiff presented himself at the proper time and place to take the train by which he desired to be transported to his destination, and certainly not when he presented himself for that purpose at an improper time and place, after the train had started, and attempted to enter a car which it was apparent was not intended for the transportation of passengers; a fact which was evidently known to plaintiff, for he says that he thought the car which he got on was the second class car—the car on which he was accustomed to ride—and did not notice that it was a baggage car. Indeed, it must be assumed that every one knows that a baggage car is not the proper place for passengers, and that a railway company, which is held to the strictest accountability for the safe delivery of baggage entrusted to its care, could not with safety permit passengers to ride in a baggage car. If the plaintiff, with his ticket in his pocket, had got on the pilot, or the engine itself, or upon the tender, or upon the express car, it certainly could not, with any propriety, be said that he had thereby established the relationship of passenger between himself and the company. Why? Simply because such places are not the proper places for passengers to be received or transported; and it seems to me that the same may be said of a baggage car. If, then, the relationship of passenger and carrier had not been established between plaintiff and defendant at the time of the accident, it is clear that the defendant company owed no duty to the plaintiff, except such as it might owe him as a trespasser; for, as was said by Mr. Justice Gary, in *Littlejohn* v. *R. &*

*D. Railroad Co.*, 49 S. C., at page 17, upon the authority of *Darwin* v. *Railroad Co.*, 23 S. C., 531, it is clear "that a person who obtrudes himself upon a railroad train may be a trespasser when the railroad company has notice of such obtrusion, and does not object, even when no injury is done to the property of the railroad company."

So that the next inquiry presented by the motion for a nonsuit is whether the testimony tended to show that there was any negligence on the part of the defendant company in the performance of such duty as it owed to the plaintiff as a trespasser. As is said in *Darwin* v. *Railroad Co.*, *supra*, at page 535, while this Court does not go to the extent which some of the cases elsewhere seem to have gone, in holding that a railroad company owes *no* duty to a trespasser, but, on the contrary, holds that "no one can safely disregard the ordinary instincts of humanity and shield himself from responsibility for an injury done, even to a trespasser, by its wanton or reckless disregard of such instincts;" yet there is no case in this State, so far as I am informed, which defines the measure of duty which a railroad company owes to one who unlawfully intrudes upon its engines or cars; and no such rule or measure is prescribed in Darwin's case, nor shall I undertake, here, to lay down any such rule or measure. It is enough to say, as was said in *Carter* v. *C. & G. Railroad Co.*, 19 S. C., 20: "It would, no doubt, require a much stronger case to make out negligence as to a trespasser, than is required in ordinary cases." Now, the only evidence in this case which even tends to show (if, indeed, that does,) any improper conduct on the part of the defendant company, or any of its servants or agents, was the fact testified to by the plaintiff, that he was ordered by a person in the baggage car, who is assumed to have been the baggage-master, to get off that car while the train was in motion. Even if it be conceded that this single fact would be sufficient to show negligence or improper conduct towards a passenger, I do not think it even tends to show any negligence or improper conduct on the part of

the defendant company towards a trespasser. There is not the slightest evidence that the baggage-master, in giving this order, did so in pursuance of any authority vested in him by the defendant company; nor is there any evidence that the baggage-master was an improper person to be entrusted with the performance of the duties committed to him, nor any evidence that the company knew, or ought to have known, that he was an unfit person to be entrusted with the performance of the duties incident to his position, nor that the baggage-master acted wantonly or recklessly in giving the order at the time, and under the circumstances, in which he gave it. It seems to me that there was a total lack of evidence tending to sustain the plaintiff's cause of action, and hence there was error in refusing the motion for nonsuit.

Having reached this conclusion, which necessitates a new trial, it is unnecessary, and would perhaps be improper, to consider the other questions raised by this appeal.

I think the judgment of this Court should be, that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.