### MONTGOMERY v. SEABOARD AIR LINE RY.

1. CORPORATE CAPACITY.—GENERAL DENIAL to a complaint alleging the corporate capacity of the defendant, does not put in issue the corporate capacity of defendant.

2. IBID.—EVIDENCE—RECORDS.—A CERTIFIED COPY of the record in the Secretary of State's office of a charter of a new corporation formed by consolidation of original railroad corporations is not admissible as evidence of the charter of the new corporation, in absence of notice to produce the original.

3. DAMAGES—IBID.—PLAINTIFF's EARNING CAPACITY at time he sustained an injury, in suit for damages therefor, may be shown by proof that he was about that time offered certain wages.

4. PLEADINGS.—ASSUMPTION OF RISKS by employee is an affirmative defense and must be pleaded to be available.

5. ASSUMPTION OF RISKS—CONSTITUTION.—The defense of assumption of risks not having been properly pleaded here, and the question not fairly arising on the record, this Court declines to consider whether sec. 15, of art. IX., of the Constitution of 1895, as to assumption of risks by railroad employes, is violative of the 14th amendment of the U. S. Constitution.

6. CHARGE.—Defining in charge the preponderance or greater weight of the evidence to be that which carries conviction, the character, intelligence, demeanor of a witness, his opportunity for knowledge, not necessarily the number of witnesses, is not a charge on the facts.

7. Ibid.—Instructing the jury that they can not consider in making up the amount of damages any mental suffering of plaintiff caused by contemplating the dark days to come to his wife and child, is not a charge on the facts as expressing an opinion that plaintiff's injury was permanent.

Before Prince, J., Kershaw, April term, 1905.　Affirmed.

Action by W. C. Montgomery against Seaboard Air Line Railway.　From judgment for plaintiff, defendant appeals.

*Messrs. Stevenson & Matheson* and *Edward McIver,* for appellant.　The former cite: *General denial raises issue of corporate capacity*: Eng. & Amer. Corp., 634; 21 S. C., 28; Bliss on Code Plead., secs. 248, 250, 260; 8 S. C., 111; 25 S. C., 315; 31 S. C., 309; 43 S. C., 17.　*Sec. 15, art. IX., Con. of 1895, contravenes 14th amendment of U. S. Constitution:* 165 U. S., 150; 63 S. C., 180; 184 U. S., 340.　*Assumption of risk may be proved under general denial:* 21 S. C., 547; 48 L. R. A., 75; 100 U. S., 213; 49 L. R. A., 1; 4 L. R. A., 412; 8 L. R. A., 636; 40 S. C., 302.　*Instruction to jury as to preponderance of evidence is charge on facts:* 56 S. C., 531.

*Messrs. Clarke & Von Tresckow,* contra, cite: *General denial does not raise the issue of corporate capacity*: 31 S. C., 309; 5 Ency. P. & P., 90; 21 Hun., 612.　*Assumption of risks is an affirmative defense and should be specifically pleaded:* 13 Ency. P. & P., 14; 61 S. C., 478; 66 S. C., 204.　*Assumption of risks is no defense to this action:* Sec. 15, art. IX, Con.; 56 S. C., 446; 60 S. C., 9; 61 S. C., 468; 66 S. C., 302; 63 S. C., 559.　*Sec. 15, of art IX., of Con. of 1895, does not contravene 14th amendment of U. S. Con.:* 63 S. C., 430; 181 U. S., 548.　*The 14th amendment was not designed to restrain the State's power of classification for special laws:* 165 U. S., 155; 127 U. S., 205; 128 U. S., 578; 151 U. S., 556; 134 U. S., 232; 142 U. S., 339; 148 U. S., 657; 151 U. S., 470; 153 U. S., 380; 165 U. S., 1.

*Definition of preponderance of evidence is not a charge on the facts:* 11 Ency. P. & P., 342; 44 S. C., 538; 57 S. C., 483.

March 16, 1906.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   In this action plaintiff sued for damages for personal injuries and recovered judgment, from which defendant appeals on exceptions presenting the questions which we now consider.

1. The complaint alleged that the defendant Seaboard Air Line Railway is a corporation duly created and existing under the laws of this State.   The defendant appeared and answered to the merits by a general denial.   Plaintiff having closed his case, without offering any proof of the defendant's incorporation, a motion for nonsuit was made on that ground and was refused on the ground that a general denial does not put in issue the corporate existence of the defendant.

The first, second and eleventh exceptions challenge this ruling.   The ruling was correct.   A general denial does not put in issue the corporate capacity of a plaintiff corporation.   *Commercial Insurance Co.* vs. *Turner,* 8 S. C., 107; *Steamship Co.* vs. *Rodgers,* 21 S. C., 33; *Palmetto Lumber Co.* vs. *Risley,* 25 S. C., 309.   For as great if not stronger reason, a general denial by a defendant sued as a corporation and answering to the merits as such, without specific denial of corporate capacity, must be regarded as a substantial admission of the character in which it was sued, and as not putting defendant's existence as a corporation in issue.   *Rembert* vs. *Railway Co.,* 31 S. C., 313; 9 S. E., 958; 5 Ency. Pl. & Pr., 79; 10 Cyc., 1347, 1354.

2. After refusal of the motion for nonsuit, the plaintiff, over defendant's objection, was allowed to introduce in evidence a copy of the charter of defendant company certified by the Secretary of State under the seal of the State.   Ap-

pellant's third and fourth exceptions question this ruling. The certified copy introduced purports to be a charter issued to a new corporation under the name of the Seaboard Air Line Railway, formed by the merger and consolidation of a number of corporations therein named pursuant to statute, now appearing as section 2050 *et seq.,* Civil Code. In reference to charters granted by the Secretary of State creating original railway corporations we find in section 1921, Civil Code, that such charters are required to be recorded by the Secretary of State in books kept for that purpose. Therefore a certified copy of such record by the Secretary of State would be admissible in evidence under section 2888, which provides: "Attested copies of all records, signed by the keeper of such records respectively, shall be deemed and allowed as good evidence in any of the Courts of this State as the original could or might have been if produced to the said Courts." But with reference to charters of consolidated corporations, under sections 2050 *et seq.,* while a charter is required to be issued, we do not find any requirement that such charter shall be recorded, although doubtless as a matter of fact they are customarily recorded. Section 2051 provides that the agreement of consolidation with certificate of its adoption by the secretary of the respective companies shall be filed in the office of the Secretary of State, and that a copy of said agreement and act of consolidation duly certified by the Secretary of State under seal shall be evidence of the existence of said new corporation. There seems to be little ground for having one rule of evidence applying to the introduction of certified copies of the charters of original railway corporations and another as applying to the charter of a new corporation formed by the consolidation of original railway corporations, but, in the absence of a statute authorizing it, we must hold that the copy of the charter was not admissible, there being no notice to adverse party to produce the original. But, whether the Circuit Court was in error or not, it was wholly immaterial and harmless in view of the

conclusion reached on the first proposition above, that the incorporation of the defendant was not in issue under the pleadings.

3. The tenth exception alleges error in admitting the plaintiff's testimony that he had been offered a job as section foreman at $43.81 a month, the same being irrelevant and not shown to be an offer made by one with authority to contract for the company. The plaintiff was injured in the employ of defendant as a section hand earning $21.60 per month. The testimony was relevant as tending to show plaintiff's earning capacity at the time he sustained the injury. Impairment of earning capacity is an element of damage involved in personal injury cases. *Bussey* vs. *Railway,* 52 S. C., 438; 30 S. E., 477; 3 Elliott on Evidence, sec. 1984. Whether the offer of a better salary was *bona fide* and by one having authority, was not presented as an objection to the testimony before the Circuit Court and cannot be urged for the first time in this Court.

4. The eighth exception raises the question, whether the Court erred in instructing the jury that the assumption of risk by the party injured is an affirmative defense and must be pleaded. There was no error in this. While such was the view of the writer as expressed in *Barksdale* vs. *Railway Co.,* 66 S. C., 217, 44 S. E., 743, we have not found an express declaration to that effect, or to the contrary, in any decision of this Court, but on principles of correct pleading such should be the rule.

First, let us understand the nature of such defense. In the case of *Bodie* vs. *Railway,* 61 S. C., 468, 478, 39 S. E., 715, the Court said: "The doctrine of assumption of risk by the employee is distinct from the doctrine of contributory negligence, although there may arise a certain condition of facts capable of supporting either inference. This has given rise to a great deal of confusion of statement when dealing with these defenses. 'Assumption of risk' rests in the law of contract and involves an implied agreement by the employee to assume the risks ordinarily incident to his employ-

ment, or a waiver, after full knowledge of an extraordinary risk, of his right to hold the employer for a breach of duty in this regard. *Hooper* vs. *R. R.*, 21 S. C., 547. The law as to waiver applies because the relation between the employer and employee is contractual and waiver is the voluntary relinquishment of a known right. By the contract' the employer and employee each assumes certain risks, but, as in all contracts, either party may waive his right to insist upon strict performance of the other's contractual duty. When, therefore, a case arises in which it is shown (*upon proper pleading*) (italics ours) that the employee has assumed the risk from which the injury arose, or, what is the same thing in effect, has waived his right to hold the employer responsible for risk, the employee's action is defeated because of his agreement and not because of negligence. 'Contributory negligence,' on the other hand, rests in the law of torts as applied to negligence, and when such defense is established the plaintiff's action is defeated, not because of any agreement expressed or implied, but because his own misconduct was a.proximate cause of the injury." In that case both assumption of risk and contributory negligence were pleaded, hence the Court considered the question of assumption of risk upon proper pleading.

In the Barksdale case, *supra,* there was a plea of contributory negligence, and the writer of this opinion took the view that, because of the distinction between the defenses of contributory negligence and assumption of risk, and the absence .of any plea of assumption of risk, that the Court should not consider any exceptions involving that question. Mr. Justice Woods, in whose views Chief Justice Pope concurred, while recognizing the broad distinction between the two defenses outlined in Bodie's case, at page 211, said: "The defenses of assumption of risk and contributory negligence are so similar that they may fade into each other. The broad line of the difference is to be kept in view, but refined distinctions between them do not advance the administration of the law. Nearly every case of contributory

negligence on the part of an employee involves in a general
sense some assumption of risk, because in order to be guilty
of contributory negligence there must be the risk of appar-
ent danger.   When a servant risks this danger in the dis-
charge of duty imposed on him in the course of usual duty,
this would be, in an exact sense, a case of assumption of
risk.   But if he improperly risks the danger, which becomes
the proximate cause of the injury, in doing that which is not
imposed on him in the course of his usual duty, it would be
contributory  negligence."   Then,  after  stating  circum-
stances, Mr. Justice Woods said : "For this reason I venture
to think the defense of contributory negligence was the
appropriate one under which this issue should have been
submitted to the jury."   The effect of this view is to assimi-
late the defenses of contributory negligence and assumption
of risk, especially as to that portion of the doctrine of
assumption of risk which relates to an employee's remaining
in the service of the master and using defective and unsafe
machinery, after knowledge of the danger and without
protest to the master.   Now, since it is an established rule
in this State that contributory negligence is an affirmative
defense, and must be pleaded—*Wilson* vs. *Railway Co.,* 51
S. C., 95, 28 S. E., 91 ;*Martin* vs. *Railway Co.,* 51 S. C.,
158, 28 S. E., 303—it must follow, especially from the last
mentioned view, that there must at least be a plea of con-
tributory negligence to support a defense founded on that
portion of the doctrine of assumption of risk which so
closely resembles contributory negligence.   Harmony and
consistency in rules of pleading would certainly be promoted
by adopting the same rule of pleading in both defenses.

We wish now to show that, whether we preserve a dis-
tinct cleavage between these two defenses or permit assimila-
tion in part, correct rules of pleading require that assumption
of risk should be regarded as an affirmative defense and
must be pleaded in order to be available.   Section 170, of
the Code of Civil Procedure, provides :

"The answer of the defendant must contain :

"1. A general or specific denial of each material allegation of the complaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief.

"2. A statement of any new matter constituting a defense or counter-claim, in ordinary and concise language, without repetition."

It thus appears that "new matter constituting a defense" must be pleaded.  Bliss, Code Pleading, sec. 327, states: "Under a denial the defendant should be permitted to show no fact that does not go directly to disprove the fact denied. Evidence of facts which admit the act charged, but which avoid its force or effect, or which discharge the obligation, is inadmissible; but, on the other hand, facts may be proved, although apparently new matter, which, instead of confessing or avoiding, tend to disprove those alleged by the plaintiff.  Such facts support a denial.  The plaintiff's allegations cannot be true because of certain other facts which are inconsistent with them."

Mr. Pomeroy, in his Remedies and Remedial Rights, sec. 691, says: "The general denial puts in issue all the material averments of the complaint or petition, and permits the defendant to prove any and all facts which tend to negative those averments, or some one or more of them.  Whatever fact, if proved, would not thus tend to contradict some allegation of the plaintiff's first pleading, but would tend to establish some circumstance, transaction or conclusion of fact not inconsistent with the truth of those allegations, is new matter.  It is said to be "new" because it is not embraced within the statement of facts made by the plaintiff; it exists outside of the narrative which he has given; and proving it to be true *does not disprove a single averment of fact* in the complaint or petition, but merely prevents or destroys the legal conclusion as to the plaintiff's rights and the defendant's duties which would otherwise have resulted from all those averments admitted or proved to be true. Such is the nature of the new matter which cannot be presented by means of a denial, but must be specially pleaded,

so that the plaintiff may be informed of its existence and of the use to be made of it by the defendant. Whether it is 'new' in the sense described must of necessity depend, and depend alone, upon the nature, extent and variety of the material allegations which the plaintiff inserts in his pleading   *   *   *   ." As stated by this author in sec. 692, new matter, *"confesses and avoids all the material allegations of the complaint or petition;* that is, it admits all the material facts averred therein, and avoids their legal result by means of the additional facts which are relied upon as constituting the defense."

The plaintiff may, however, so frame his complaint that a general denial will admit proof of facts which would otherwise be new matter to be pleaded, as in *McElwee* vs. *Hutchinson,* 10 S. C., 438; *Long* vs. *Railway,* 50 S. C., 49, 27 S. E., 531; *Latimer* vs. *Cotton Mills,* 66 S. C., 139, 44 S. E., 559; *Hutchings* vs. *Manufacturing Co.,* 68 S. C., 514, 47 S. E., 728—wherein such affirmative defenses as payment, mitigation of damages, and contributory negligence were permitted on a general denial because of the particular allegations in the complaint which would necessarily become issuable by denial.

Our cases further illustrate the effect of general denial in personal injury cases by holding that such a plea covers a defense that negligence of plaintiff, or some third person, was the *sole* cause of the plaintiff's injury, on the ground that such fact negatives the allegation that defendant's negligence was the cause, and does not admit defendant's negligence, as does the plea of contributory negligence. *Wilson* vs. *Railway,* 51 S. C., 95, 28 S. E., 91; *Kennedy* vs. *Railway Co.,* 39 S. C., 543, 38 S. E., 169. But all the cases throughout limit the effect of a general denial to a mere negation of the material facts stated in the complaint.

Applying the foregoing elementary principles of pleading to the case in hand, it is clear that assumption of risk is new matter in the nature of confession and avoidance and must be pleaded. The complaint alleges: (1) the incorporation

of defendant and its operation of the railroad whereon the injury occurred; (2) the employment of plaintiff by defendant as a section hand; (3) the duty of the plaintiff to perform such service and to assist in the operation of lever car; (4) his action in reference thereto under the order of the section master; (5) plaintiff's duty to obey the section master, and the injury to plaintiff while obeying said order caused by the unsafe condition of the lever car, with its loose handle-bar and wheels having too much play so as to jerk and jump over the rough and uneven track of defendant, which caused plaintiff to be hurled violently in front of the car so that the left hand wheels therof passed over his body, to his permanent injury; (6) the negligence and wilfulness of the defendant in the premises; (7) the consequent suffering, trouble and expense, and permanent injury.

A general denial necessarily put in issue the fact that plaintiff sustained any contractual relation with defendant and that he suffered any inury while in the service of the defendant. Such defense is wholly inconsistent with the theory of assumption of risk, which involves an admission of the contractual relation of master and servant and an assertion that the injury which happened was the result of the risks impliedly assumed by the servant in his contract, or that the servant has by his conduct waived his right to call upon the master for compensation for injury resulting from the master's negligence. It is only plausible to say that plaintiff was bound to prove the contractual relation and the risk which resulted in his injury, and that he thereby in establishing his own case makes available to defendant any legal result or implication of law arising from such facts. This is true only when the plaintiff, in making out his case, must allege and prove facts from which the legal result claimed may follow. The plaintiff did not allege, nor was it necessary to allege, and prove that he had no knowldege, actual or constructive, of the defective and unsafe condition of the machinery such as should have caused him to refuse to obey the order of the section master and quit the

service, or take the risk upon himself.   Such facts are not embraced within the statement of facts made in the complaint, are outside of plaintiff's narrative, are *additional* facts which to be available must be pleaded as new matter constituting a defense in avoidance of the case made by plaintiff.

While a plea of contributory negligence involves an admission of the alleged negligence of defendant and avoids it by new matter, a plea of assumption of risk involves an admission of the alleged contractual relation of master and servant between the plaintiff and defendant and injury as a result of risks incurred by plaintiff, but avoids liability by new matter showing that the injury resulted from risks voluntarily assumed by plaintiff.   Therefore, any reason which supports contributory negligence as an affirmative defense to be pleaded, will also support assumption of risks as an affirmative defense to be pleaded, and every suggestion which may be urged to show that "assumption of risk" may be shown under a general denial may with equal force be urged to overthrow the well settled rule in this State that a general denial will not support the defense of contributory negligence.

We have perhaps considered this matter of pleading at too great length, but in view of the late expression of the Court in *Charping* vs. *Toxaway Mills,* 70 S. C., 473, that might seem to imply a doubt on this subject, although in that case assumption of risk was pleaded, we have thought it best that the correct rule be stated and set at rest.

5. The foregoing conclusion renders it unnecessary to consider questions sought to be raised by the fifth, sixth and seventh exceptions, which complain of error in refusing to charge certain requests of defendant touching the matter of assumption of risk.   In the absence of any such plea, it was not error to refuse requests on that subject.

6. For the same reason we overrule the fourteenth exception, which alleges error in the charge of the Court that "under art. IX., sec. 15, of the Constitution, the doctrine of assumption of risk has no application to this case."   Under

33—73

this and other exceptions it was contended that art. IX., sec. 15, of the Constitution, violated the 14th amendment to the Federal Constitution in denying to railroad companies the equal protection of the law, in abridging their right to contract with employees with reference to assumption of risk by them, and in discriminating between conductors and engineers and other employees. In the absence of any defense involving assumption of risk, defendant could not be prejudiced by any charge that such defense was inapplicable to this case under our Constitution. As it is not necessary to the disposition of this appeal to consider the validity of this provision of the Constitution, and no such question fairly arises on the record, it is proper for the Court to decline to go into that subject.

7. After stating the issues the Court charged the jury, in part, as follows: "And it is this denial on the part of the defendant that makes it necessary for plaintiff, in order to recover, to establish the allegations of his complaint by the preponderance of the testimony, the weight of the evidence, it would be better termed perhaps; that means not necessarily the number of witnesses; one man's testimony might outweigh the declaration of a thousand; it depends upon the character of the witnesses, his intelligence, his opportunity for knowing, his reputation for truthfulness, his demeanor on the stand, all of those things that enter into a man's declaration which carry on their face the stamp of either truth or inveracity. It is how much you believe, what you believe, what is credible, what, squared with the straight-edge of common sense as applied to the experience of man. What is reasonable. Those are the things that help the jury to determine the weight of the testimony, not the number. You know men whose veracity, whose statements, you would accept unquestionably against the statements of men whose character for veracity was bad, or whose opportunity for knowing was not good. So the weight of evidence is not to be governed by numbers. It is what you believe, what is credible, what is reasonable." It

is contended by appellant's ninth and twelfth exceptions that this charge violated the Constitution, prohibiting judges from charging juries in respect to matters of fact, in invading the province of the jury by giving them rules for weighing the testimony in a case where there was conflict of testimony. We do not think the charge is subject to the criticism made. It does not state the testimony in whole or in part, does not intimate to the jury the Judge's impression of the testimony, but is a clear and helpful statement of the meaning of the law when it declares that the plaintiff must recover by the preponderance of the evidence, or by the greater weight of the evidence.

8. The thirteenth exception alleges that the following charge was also a charge on the facts: "Now, in this case, if you should find that the plaintiff has suffered mental anguish because of the contemplation of the dark days to come in the future for his wife and little child, such suffering cannot enter into your judgment in this case, cannot enter into the amount of the verdict, cannot affect the amount of the verdict." It is contended that this charge was an instruction by the Court that the prospect ahead of plaintiff's wife and child was dark and tended to express an opinion on a controverted point, namely: whether plaintiff's injury was permanent. We do not so understand the meaning or effect of this charge. In that portion of the charge from which this sentence is taken the Court was instructing the jury that plaintiff could not recover for mental suffering disconnected with physical injury, and was cautioning the jury not to take into consideration such mental suffering, if it existed.

The judgment of the Circuit Court is affirmed.

*This case has been carried to United States Supreme Court on a writ of error.*