7009

DuBOSE v. ATLANTIC COAST LINE R. R. CO.

1. Carrier—Passenger.—A railroad company is not bound to provide a safe place for passengers to get on and off on both sides of its trains at its stations, nor to keep a lookout on both sides, unless it expressly or impliedly invites passengers to so use both sides. That the company knows that some passengers now and then use both sides will not show an implied invitation.

2. Ibid.—Ibid.—One who has become a passenger by purchasing a ticket on the station premises with the *bona fide* intention of boarding a train then nearly due, is only entitled to the care due a passenger while he remains on the premises and in the places provided by the carrier for the accommodation of passengers or in such places as the carrier has expressly or impliedly invited passengers to use.

3. Ibid.—Licensee—Charge.—Under the evidence in this case, it was not prejudicial error to appellant to instruct jury as to care due by carrier to licensee.

Before Hydrick, J., Sumter, November term, 1907. Affirmed.

Action by R. F. DuBose against Atlantic Coast Line Railroad Company. From judgment for defendants, plaintiff appeals.

*Messrs. Davis D. Moise* and *L. D. Jennings,* for appellant, cite: *Negligence is presumed from injury to passenger:* 61 S. C., 345; 60 S. C., 48; 57 S. C., 229. *Care due passenger:* 20 S. C., 222. *Once a passenger, a passenger to end of destination:* 52 S. C., 566; 51 S. C., 154. *Care due such person:* 51 S. C., 154. *Passenger may board from either side of a car:* 6 Cyc., 647.

*Messrs. P. A. Willcox* and *Mark Reynolds,* contra, cite: *Passengers should only use both sides of train when so invited:* 72 S. C., 339; 58 S. C., 491. *Duty of carrier to one boarding train at improper place:* 51 S. C., 150, 296; 52 S. C., 566; 57 S. C., 243; 74 S. C., 103; 55 S. C., 391; 6

Cyc., 642; 17 S. W., 889. *Passengers should conform to reasonable rules of carrier:* 5 Ency., 485, 488, 489; 148 Mass., 207; 20 S. C., 222; 52 S. C., 566; 163 Mass., 245.

September 8, 1908. The opinion of the Court was delivered by

Mr. Justice Jones. Judgment on verdict was rendered for defendant in this action for personal injuries, and plaintiff appeals on exceptions to instructions given the jury.

On January 29, 1905, plaintiff purchased from defendant's agent at Sumter, S. C., a ticket as passenger from Sumter to Mayesville, S. C., on defendant's train No. 32, from Augusta, due at Sumter about 6:30, after nightfall. After purchasing the ticket and checking his bicycle, plaintiff went from the depot across the intervening tracks to the house of Wm. H. Hodges for a bundle. This house was off the station premises and about thirty yards from the track to be occupied by No. 32, which track was the third and last parallel track from the depot. As plaintiff was going across the tracks to Hodges he saw No. 32 come in and stop at the water tank, which was about one hundred yards from the station. After taking water, 32 came to the station. The usual place for boarding the train was on the depot side, where the ground between the tracks was macadamized and smooth and where the conductor and assistants stood during the letting off and taking on of passengers. There was testimony, however, that passengers frequently got on and off on the other side. The ground on that side was lower and less smooth, except at the place prepared for the handling of the baggage, where the baggage car stopped.

The plaintiff offered testimony tending to show that, when he secured his bundle at Hodges, he walked back to his train, which was then standing still at the station; that, with his bundle under his right arm, he caught the railing of the front end of the second-class coach with his left hand

and was on the bottom step of the platform, when the train, without stopping its usual time and without giving any signal, suddenly jerked forward, which overbalanced him, and he fell with his hand on the rail, which was crushed by the wheel, necessitating amputation. The negligence alleged in the complaint, as the cause of his injury, was the sudden jerking forward of the train before leaving time, without signal or warning. The answer, besides a general denial, alleged that the plaintiff brought about his injury, solely, by his own negligence, and also plead contributory negligence. Defendant offered testimony tending to show that the train, after stopping three minutes at the tank, stopped seven minutes at the station; that the usual and prepared place for boarding said train was on the depot side, which was provided with lights; that the train was so constructed that it would be practically impossible to move it off with a jerk sufficient to throw a person; that, as matter of fact, it moved off smoothly, without a jerk; that the conductor made the usual call of "all aboard" and the bell was sounded before starting; that plaintiff's presence on the opposite side of the train was unknown to defendant's agents. One witness testified that he saw plaintiff running towards the train as it pulled out.

The verdict of the jury shows that the issues of fact were found in favor of the defendant; but the foregoing reference to the testimony will aid in the consideration of the exceptions to the charge.

The plaintiff requested the Court to charge as follows: "Where it is customary for passengers to alight from passenger trains at any station of the railroad company on both sides, it is the duty of the railroad company to provide equal facilities for passengers to alight or to take passage on both sides." In response to this request, the Court gave the charge with this qualification: "That would be so if the railroad company expressly or impliedly invited them to alight on both sides, but not other-

wise." It is contended that the charge should have been given without modification or that the Court should have charged, that if passengers had been accustomed, with the knowledge of the railroad company, to get on and off on both sides of its train at this particular passenger station, and the company acquiesced in it, then it became the duty of the company to either provide equal facilities on both sides for passengers to get off and on, and equal protection, or the company should have notified the passengers not to get off and on on both sides, but should have informed and directed them at which side to get off and on, and should have further charged that it was the custom of passengers to get on and alight on both sides with the knowledge of the company, then the company was bound to take equal precautions for the safety of passengers getting off and on their trains on both sides before starting their trains.

In the first place, it may be observed that the injury is not alleged to have resulted from any failure to provide proper facilities for passengers on both sides of the train, but that the delict consisted in not stopping the train a reasonable length of time and in suddenly starting it with a jerk and without a signal. If the term "equal facilities" must be construed as including the keeping of equal watch or lookout on both sides to prevent injury to passengers boarding or disembarking, it is clear that the instructions desired would place a burden too onerous on the carrier, unless the circumstances show an invitation to passengers to use both sides. It is perfectly reasonable for a railroad to adopt a particular side for the use of passengers and make its arrangements for the protection of passengers with respect to that side. It is impossible for a conductor and his assistants to keep equal watch on both sides of the train at the same time, and it would be unreasonably onerous to require such a duplication of servants as would equally protect both sides. When a railroad has selected its usual place for boarding and alighting from its trains, and reasonable facilities, assistance

and lookout are there maintained for the safety of passengers, and circumstances show that such is the regulation of the company, it is the duty of passengers to conform thereto. Many belated, impatient, careless or reckless people may choose to take the risk of not conforming, or passengers, for reasons of their own, may prefer to get on or off on the wrong side. The company may know that such is frequently done and enter no protest against it, and yet, if it does not hold out any invitation to so use its property, but, on the contrary, invites the use of a particular place, under reasonable precautions for safety, it cannot be held to be duty bound to provide equal safeguards at all other places which the passengers wrongfully choose to use. This must in fairness be the rule, and it grows out of the duty of the carrier to exercise the highest degree of care practicable in making provision for the safety of passengers in getting on or off its trains, the impracticability of providing equally effective safeguards at every possible point of entry and exit, and the correlative duty of passengers to comply with the reasonable rules and regulations adopted to promote safety.

The remaining exceptions are to the following portion of the charge: "The law requires common carriers of passengers to exercise the highest degree of care for the safety of their passengers. When a person goes to a railway station a reasonable time before the departure of a train, *bona fide* intending to become a passenger, he is, in law, a passenger, and entitled to the rights of a passenger while there intending to become a passenger and while he is in the place provided by the company for waiting passengers, or on the place provided by the company for passengers to approach and get on its trains, or in the place where the company expressly or impliedly invites passengers to get on, if he is then approaching the train to get aboard, or if he is actually getting aboard the train in a proper way and at the proper time. If he goes where he has no right

to be, then he becomes a trespasser and the company owes him no duty except not to wilfully or wantonly injure him. The company would be liable, however, if it wilfully or wantonly injured even a trespasser. If a person goes where he is not invited to get aboard the train, but where passengers do get on and off with the knowledge, acquiescence and permission of the company, then he would be a licensee and would not be entitled to the degree of care required by the company for the safety of passengers, which, as I have said, is the highest degree of care; but he would be entitled, under those circumstances, to the exercise of ordinary care for his safety,—that is, such care as an ordinary prudent person would exercise under the circumstances of the situation.

"Now, it is for you to say whether at the time of his alleged injury the plaintiff was a passenger, entitled to the highest degree of care, or a licensee, and entitled to the exercise of ordinary care, or a trespasser, to whom the defendant owed no duty except not to wilfully or wantonly injure him."

The second, third and fourth exceptions charge error in the sentence: "If a passenger goes where he has no right to be, then he becomes a trespasser, and the company owes him no duty except not to wilfully or wantonly injure him." The specifications are: (1) When a person once becomes a passenger, he remains a passenger until he reaches his destination; and even though he goes where he has no right to be, the carrier throughout is bound to exercise the highest degree of care to avoid injuring him. (2) That it is the duty of a carrier to prevent a passenger from going where he had no right to go, and to protect the passenger and warn him of danger.

It will be observed that the charge imposed upon the carrier to exercise the highest degree of care for the safety of a passenger "while he is in the place provided by the company for passengers to approach and get on its train, or in the place where the company expressly or impliedly invites

passengers to get on, if he is then approaching the train to get aboard, or if he is actually getting aboard the train in a proper way and at the proper time."

When the Court was instructing with reference to the degree of care due a passenger, when he is where he has no right to be, he was no doubt endeavoring to state the law which should govern in case the jury should adopt a theory finding support in the evidence, viz., that plaintiff, after purchasing his ticket, left the station premises while the train was approaching and, thereafter, running back, attempted to board the moving train at a place where he could not be seen by those in charge of the train and where passengers were not invited or expected to board the train. Considered with reference to this theory of the case, the instruction was correct. We cannot, without qualification, indorse appellant's view, that once a passenger always a passenger until destination is reached.

In *Taylor* v. *A. C. L.,* 78 S. C., 552, 585, the general rule as to the relation of passenger and carrier is thus stated: "When one is on the carrier's station premises, with a *bona fide* purpose of becoming a passenger, within a reasonable time before the departure of the train to be boarded, he is entitled to protection as a passenger. *Johns* v. *Railway Co.,* 39 S. C., 162, 17 S. E., 698; *Halcombe* v. *Railway Co.,* 66 S. C., 10, 44 S. E., 68. As a corollary of this rule, when a passenger has reached his destination and alighted from the train, he is still entitled to protection as a passenger until he has had a reasonable time to leave the station premises. 4 Elliott on Railroads, sec. 1592; *Brunswick, etc., Ry.* v. *Moore* (Ga.), 28 S. E., 1000; *Glenn* v. *Lake Erie, etc., Ry.* (Ind.), 75 N. E., 282."

In *Martin* v. *Ry. Co.,* 51 S. C., 150, 158, 28 S. E., 303, the Court held that "the contractural relation of passenger and carrier is created when a ticket is purchased, and when a person, with a ticket and with the intention to ride as a passenger, goes upon the train upon which his ticket entitles

him to ride as a passenger, even if he boards the train at an unusual time and at an unusual place, he is entitled to the rights of a passenger at least to the extent of not being mistreated by the employees of the company." In the last cited case the Court further said: "The testimony tended to establish the following: (1) That plaintiff had a ticket entitling him to ride on the train mentioned in the complaint. (2) That it was his intention to ride on the passenger car of said train when he boarded it. (3) That the car upon the platform of which he entered was divided into two apartments, one of which was used as a place for baggage and the other for second-class passengers. (4) That the train was moving slowly when plaintiff got upon the platform, but he was not injured while boarding the train. (5) That passengers had previously ridden on said platform, and whenever seen by the baggagemaster were always brought inside. Whether the plaintiff was a passenger or a trespasser depended upon the inference to be drawn from the testimony, under proper instructions of the Court, and was peculiarly a matter for the consideration of the jury."

There was also testimony in Martin's case that when he got on the platform the baggagemaster ordered him off and moved towards him threateningly, which caused him to jump off the moving train to his injury. In such a situation he should not be so mistreated, whether passenger or trespasser. When it is stated that one becomes a passenger when he purchases a ticket, that, of course, means so long as he remains or goes where he is expressly or impliedly invited by the carrier in effectuating the contract of transportation. One may be a passenger while waiting with a ticket in the station building, but he would not be a passenger while climbing onto the roof of the building for the purpose of waiting there. One, though having a passenger's ticket, ceases to have the full rights of a passenger during the time he is off the station premises. To restore his full rights as such he must again present himself for

transportation at the proper time and place, according to the reasonable rules of the carrier. *Merrill* v. *Eastern Ry. Co.*, 1 N. E., 548; *Webster* v. *Fitchburg R. Co.*, 37 N. E., 165; *Jones* v. *Boston & M. R.*, 39 N. E., 1019.

We are not considering a case involving inquiry as to carrier's duty on discovering one attempting to board its train as a passenger in a position of peril.

The foregoing rules involve a consideration of the fifth exception, in so far as it submits to the jury to determine whether plaintiff was a mere licensee and entitled only to such care as an ordinary prudent person would exercise under the circumstances of the situation. The rule of law as applied to a licensee was correctly stated. While we do not well see under what reasonable view of the testimony plaintiff could be a licensee at the time of boarding the train, it was certainly not prejudicial to him to submit his view to the jury, after having correctly instructed them as to the duty of the defendant in case they should find that plaintiff was a passenger. Treating the case as a whole, it was fairly submitted to the jury under a clear and able charge covering every possible phase of the case.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.